IN THE UNITED STATES DISTRICT COURT

FILED JUN 21 '01 AM 9:3

FOR THE SOUTHERN DISTRICT OF ALABAMA

SOUTHERN DIVISION

| | | |
|---|---|---|
| GONZALO FITCH MONTIEL, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO.: 01-0447-BH |
| | ) | Three-Judge Court |
| DON DAVIS, in his | ) | |
| official capacity as Probate Judge | ) | |
| of Mobile County, Alabama, | ) | |
| ADRIAN JOHNS, in his | ) | |
| official capacity as Probate Judge | ) | |
| of Baldwin County, Alabama, | ) | |
| JOHN H. ARMSTRONG, in his | ) | |
| official capacity as Probate Judge | ) | |
| of Washington County, Alabama, | ) | |
| MARY PRESNELL, in her | ) | |
| official capacity as Probate Judge | ) | |
| of Clarke County, Alabama, | ) | |
| OTHA LEE BIGGS, in his | ) | |
| official capacity as Probate Judge | ) | |
| of Monroe County, Alabama, | ) | |
| RACHEL AGERTON, in her | ) | |
| official capacity as Probate Judge | ) | |
| of Escambia County, Alabama, | ) | |
| JAMES BENNETT, in his | ) | |
| official capacity as Secretary of State | ) | |
| of Alabama, and | ) | |
| STEVE WINDOM, in his | ) | |
| official capacity as Lieutenant | ) | |
| Governor of the State of Alabama | ) | |
| | ) | |
| Defendants. | ) | |

COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND OTHER RELIEF
REGARDING REAPPORTIONMENT OF
PRESENT STATE LEGISLATIVE, CONGRESSIONAL, AND
BOARD OF EDUCATION DISTRICTS IN THE STATE OF ALABAMA

I.   Nature of Action.

1.   This action arises under the Fourteenth Amendment to the United States Constitution to obtain relief against malapportioned districts used to elect members of Congress since 1992, to elect members of the state legislature since 1993, and to elect members of the State Board of Education during the past decade. The Alabama legislature has failed in its responsibility under state law to properly and fairly apportion Alabama's population among congressional, legislative, and State Board of Education districts to reflect population changes that have occurred according to the 2000 census. Relief is sought pursuant to 42 U.S.C. §§ 1983, 1988, and 28 U.S.C. §§ 2201 et seq.

II.   Jurisdiction and Venue.

2.   This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, 1343, and 2284 and 42 U.S.C. § 1983, as this case involves a question arising under the laws or Constitution of the United States, and it seeks to redress the deprivation, under color of state law, of an equal right secured by the Constitution of the United States.

3.   Venue is proper in this division of this district under 28 U.S.C. § 1391(b)(1).

### III.    Three-Judge Court

4.    A three-judge district court is required by 28 U.S.C. § 2284(a) to adjudicate Counts I and II of Plaintiff's Complaint because, in said counts, the Plaintiff challenges the constitutionality of the apportionment of congressional districts and the apportionment of a statewide legislative body, the Alabama Legislature.

### IV.    Parties

5.    Plaintiff Gonzalo Fitch Montiel is an adult resident citizen and registered voter of the State of Alabama residing in Mobile County, Alabama, State Senate District 34 as presently configured, State House District 100, as presently configured, the First Congressional District, as presently configured, and State Board of Education District 1, as presently configured.  Plaintiff Montiel is underrepresented in the State Senate, in the State House of Representatives, in his congressional district, and in his State Board of Education District because of population changes causing the Alabama Senate, the Alabama House of Representatives, the Alabama Congressional delegation, and the Alabama State Board of Education to no longer be apportioned on the basis of one person, one vote.  Plaintiff Gonzalo Fitch Montiel brings this action on behalf of himself and all other citizens of the State of Alabama similarly situated.

3

6.     Defendant Don Davis is sued in his official capacity as the Probate Judge of Mobile County, Alabama and in his representative capacity on behalf of a class of probate judges across Alabama, each of whom serves as the chief elections officer in each county.  At all times referred to herein, he is acting under color of state law.

7.     Defendant Adrian Johns is sued in his official capacity as the Probate Judge of Baldwin County, Alabama and in his representative capacity on behalf of a class of probate judges across Alabama, each of whom serves as the chief elections officer in each county.  At all times referred to herein, he is acting under color of state law.

8.     Defendant John H. Armstrong is sued in his official capacity as the Probate Judge of Washington County, Alabama and in his representative capacity on behalf of a class of probate judges across Alabama, each of whom serves as the chief elections officer in each county.  At all times referred to herein, he is acting under color of state law.

9.     Defendant Mary Presnell is sued in her official capacity as the Probate Judge of Clarke County, Alabama and in her representative capacity on behalf of a class of probate judges across Alabama, each of whom serves as the chief elections officer in each county.  At all times referred to herein, she is acting under color of state law.

10.     Defendant Otha Lee Biggs is sued in his official capacity as the Probate Judge of Monroe County, Alabama and in his representative capacity on behalf of a class of probate judges across Alabama, each of whom serves as the chief elections officer in each county.  At all times referred to herein, he is acting under color of state law.

11.     Defendant Rachel Agerton is sued in her official capacity as the Probate Judge of Escambia County, Alabama and in her representative capacity on behalf of a class of probate judges across Alabama, each of whom serves as the chief elections officer in each county.  At all times referred to herein, she is acting under color of state law.

12.     Defendant James Bennett is sued in his official capacity as Secretary of State for the State of Alabama, chief state elections officer in Alabama.  At all times referred to herein, he is acting under color of state law.

13.     Defendant Steve Windom is sued in his official capacity as Lieutenant Governor for the State of Alabama, highest ranking legislative official in the State of Alabama and ex officio president of the Senate.  At all times referred to herein, he is acting under color of state law.

V.   Class Action Averments.

14.   Plaintiff Gonzalo Fitch Montiel avers, with regard to a class of all citizens of the State of Alabama similarly situated and with regard to a defendant class of all probate judges in the State of Alabama, that:

a.   the classes are so numerous that joinder of all members is impracticable;

b.   there are questions of law or fact common to the classes;

c.   the claims or defenses of the respective class representatives are typical of the claims or defenses of the classes; and

d.   the representative parties will fairly and adequately protect the interests of the classes.

15.   Plaintiff Gonzalo Fitch Montiel avers, with regard to a class of all citizens of the State of Alabama similarly situated and with regard to a defendant class of all probate judges in the State of Alabama, that separate actions by or against individual members of the classes would create a risk of inconsistent adjudications with respect to the individual members of the classes.

16.   Plaintiff Gonzalo Fitch Montiel avers, with regard to a class of all citizens of the State of Alabama similarly situated and with regard to a defendant class of all probate judges in the State of Alabama, that the questions of law or fact common to the members of the classes predominate over any questions affecting

only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy should the Court enter the declaratory relief sought by Plaintiff Gonzalo Fitch Montiel with regard to a class of all citizens of the State of Alabama similarly situated.

VI.   Statement of Facts.

17.   Alabama is a covered jurisdiction within the meaning of Section 5 of the Voting Rights Act of 1965, 42 U.S.C. § 1973 (c).

18.   Consequently, any reapportionment plan enacted as law in Alabama must be either submitted to the United States Attorney General for preclearance approval by the Department of Justice or approved through a declaratory judgment action filed in the United States District Court for the District of Columbia.

19.   The Alabama legislature was last reapportioned in 1983, only after federal court intervention caused by litigation after the federal census conducted in 1980. Federal court intervention was also necessary after the federal census in 1970 and the federal census in 1960. See, e.g., Sims v. Frink, 208 F.Supp. 431 (M.D. Ala. 1962), aff'd sub nom., Reynolds v. Sims, 377 U.S. 583 (1964); Sims v. Amos, 336 F.Supp. 924 (M.D. Ala. ), aff'd, 409 U.S. 942 (1972); Burton v. Hobbie, 561 F.Supp. 1029 (M.D. Ala. 1983); Kelley v. Bennett, 96 F.Supp. 2d 1301 (M.D. Ala. 2000), vacated, 531 U.S. 28 (2000).

20.    After the 1990 federal census, the Alabama Legislature failed once
again to reapportion itself to reflect changes in population as required by state and
federal law.  The districts for the Alabama Senate and Alabama House of
Representatives used since the 1990 federal census were created by a consent
settlement in the Circuit Court of Montgomery County, Alabama, which was not
appealed.  This districting scheme, known as the Reed-Buskey Legislative
Districting Plan, was later challenged in both state and federal court litigation for
its creation of racially gerrymandered districts.  Sinkfield v. Kelley, 531 U.S. 28
(2000); Kelley v. Bennett, 96 F.Supp. 2d 1301 (M.D. Ala. 2000); Rice v. Sinkfield,
732 So.2d 993 (Ala. 1998).

21.    The Alabama legislative elections in 1994 and 1998 were conducted
pursuant to the districts established by the state circuit court settlement.  As
disclosed by the 2000 decennial census, since this 1993 state court settlement,
there has been a significant shift in population throughout the existing Alabama
Senate and House of Representatives districts, which were based on 1990 census
data.

22.    As a result of these population shifts, the Alabama Senate districts and
the Alabama House districts are no longer apportioned according to the
constitutional principle of one person-one vote.[1]

_____

[1] See Exhibit A, prepared by the State of Alabama Reapportionment Office, which

23.    The Alabama Legislature last fulfilled its responsibility to divide the state into seven fairly apportioned Congressional districts in 1981.  After the 1990 census, federal court intervention was necessary to implement a court-ordered redistricting plan for Congressional districts.  Wesch v. Hunt, 785 F.Supp. 1491 (S.D. Ala. 1992).

24.    As disclosed by the 2000 decennial census, there has been a significant shift in population from the existing Alabama Congressional Districts, which were shaped by the court-ordered redistricting plan in Wesch v. Hunt, 785 F.Supp. 1491, based on 1990 census data.[2]

25.    Also after the 1990 census, the Alabama Legislature failed to reapportion the Alabama State Board of Education into eight fairly apportioned districts to reflect population changes as required by state and federal law.

26.    The Alabama State Board of Education is comprised of eight members elected from single member districts and with the Governor serving as an ex officio ninth member and president.  Ala. Code  § 16-3-1-2.

---

displays the ideal population for legislative districts, in conjunction with Exhibits B and C, which display the actual population of Alabama's Senate and House districts according to the 2000 census.

[2] See Exhibit A, prepared by the State of Alabama Reapportionment Office, which displays the ideal population for legislative and congressional districts, in conjunction with Exhibit D, which display the actual population of Alabama's congressional districts according to the 2000 census.

27.    Extensive state and federal litigation occurred throughout the past decade regarding malapportioned State Board of Education districts and involving claims for relief that specific districts were unconstitutionally racially gerrymandered districts in violation of the Fourteenth Amendment. See, e.g., Sahag v. Mitchell, CV-96-AR-307-M (N.D. Ala. July 3, 1996); Ex Parte Collins, 717 So.2d 771 (Ala. 1998); Collins v. Bennett, 684 So.2d 681 (Ala. 1995) .

28.    Elections were conducted in staggered terms, as required by Ala. Code § 16-3-1, during the 1990s pursuant to the State Board of Education districts created by the state and federal courts because of the Alabama legislature's failure to draw fairly apportioned districts that comply with constitutional requirements.

29.    As disclosed by the 2000 decennial census, there has been a significant shift in population from the existing Alabama State Board of Education districts, which were based on 1990 census data.[3]

30.    According to the 2000 census, Alabama's total population is 4,447,100 persons.[4]

31.    In order to achieve exact population equality among Alabama's thirty-five Senate districts, the ideal population of each Senate district would be 127,060 persons.[5]

---

[3] See Exhibit E, which display the actual population of the State Board of Education districts according to the 2000 census.
[4] See Exhibit A, prepared by the State of Alabama Reapportionment Office.

32.    Alabama's most populous Senate district, Senate District 2, has 158,623 persons. Accordingly, Senate District 2 exceeds the "ideal" population by 31,563 persons, or 24.84%. Alabama's least populous Senate district, Senate District 20, has only 94,293 persons. Accordingly, Senate District 20 falls short of the "ideal" population by 32,767 persons, or 25.78%. The difference between the populations of the most populous and the least populous districts is 64,330 persons, which constitutes a relative overall variance from the ideal population of 50.63%.[6]

33.    Plaintiff Gonzalo Fitch Montiel resides in Senate District 34, which, according to the 2000 census has 137,382 persons. Senate District 34 varies from the "ideal" Senate district by 10,322 persons or 8.12%. The difference between Senate District 34 and the least populous Senate district is 43,089 persons.[7]

34.    In order to achieve exact population equality among Alabama's 105 House districts, the ideal population of each House district would be 42,353.33 persons.[8]

35.    Alabama's most populous House district, House District 95, has 63,157 persons. Accordingly, House District 95 exceeds the "ideal" population by 20,803.67 persons, or 49.11%. Alabama's least populous House district, House District 60, has only 31,325 persons. Accordingly, House District 60 falls short of

---

[5] See Exhibit A.
[6] See Exhibit B.
[7] See Exhibit B.

the "ideal" population by 11,028.33 persons, or 26.03%. The difference between the populations of the most populous and the least populous House districts is 31,832 persons, which constitutes a relative overall variance from the ideal population of 75.15%.[9]

36.    Plaintiff Gonzalo Montiel resides in House District 100 which, according to the 2000 census, has 47,027 persons and which varies from the "ideal" House district by 4,703.67 persons or 11.10%. The difference between House District 100 and the least populous House District 60 is 15,732 persons.[10]

37.    In order to achieve exact population equality among Alabama's seven Congressional districts, the ideal population of each Congressional district would be 635,300 persons.[11]

38.    Alabama's most populous Congressional district, Congressional District 6, has 659,274 persons. Accordingly, Congressional District 6 exceeds the "ideal" population by 23,794 persons, or 3.77%. Alabama's least populous Congressional district, Congressional District 7, has only 544,117 persons. Accordingly, Congressional District 7 falls short of the "ideal" population by 91,183 persons, or 14.35%. The difference between the populations of the most

---

[8] See Exhibit C.
[9] See Exhibit C.
[10] See Exhibit C.
[11] See Exhibit A.

populous and the least populous Congressional districts is 115,157 persons, which constitutes a relative overall variance from the ideal population of 18.12%.[12]

39.    Plaintiff Gonzalo Fitch Montiel resides in Congressional District 1, which, according to the 2000 census, has 646,181 persons. Congressional District 1 varies from the "ideal" Congressional district by 10,881 persons or 1.71%.  The difference in population between Congressional District 1 and the least populous Congressional District 7 is 102,064 persons.[13]

40.    In order to achieve exact population equality among Alabama's eight State Board of Education districts, the ideal population of each district would be 555,887.5 persons.[14]

41.    Alabama's most populous State Board of Education district, District 6 has 592,542 persons.  Accordingly, District 6 exceeds the "ideal" population by 36,654.5 persons, or 6.59%.  Alabama's least populous State Board of Education District, District 4, has 489,823 persons.  Accordingly, District 4 falls short of the "ideal" population by 66,064.5 persons, or 11.88%.  The difference between the populations of the most populous and least populous district is 102,719, which constitutes a relative overall variance from the ideal population of 18.47%.[15]

---

[12] See Exhibit D.
[13] See Exhibit D.
[14] Total Alabama population of 4,447,100 divided by eight districts.
[15] See Exhibit E.

42.   Plaintiff Gonzalo Fitch Montiel also resides in State Board of Education District 1, which, according to the 2000 census, has 578,698 persons. State Board of Education District 1 varies from the "ideal" State Board of Education district by 22,810.5 persons or 4.10%.  The difference in population between State Board of Education District 1 and the least populous State Board of Education District 4 is 88,875 persons.[16]

43.   The Alabama Constitution requires that the Alabama Legislature reapportion itself in the first legislative session following the decennial census. Ala. Const. of 1901, art. IX, § 198.  The Legislature concluded its last legislative session on May 21, 2001 after the census data was made available to the State of Alabama in March 2001.  No reapportionment plan has been enacted by the Legislature, nor was any reapportionment plan offered by any legislator during the legislative session.

44.   The failure of the Alabama Legislature to reapportion itself violates the voting rights of Plaintiff Gonzalo Fitch Montiel and the voting rights of other Alabama citizens protected by the United States Constitution and federal law.

45.   The intentional failure of the Alabama Legislature to reapportion itself as required by the United States Constitution and Alabama Constitution serves primarily to further the interests of incumbent Senators and Representatives in

---

[16] See Exhibit E.

districts significantly underpopulated in comparison to the "ideal" districts and the districts in which Plaintiff Montiel reside.

46.    The Alabama Legislature also failed to reapportion its population according to the 2000 census among its seven Congressional districts.  This failure to reapportion its Congressional districts violates the voting rights of Plaintiff Montiel and of other Alabama citizens protected by the United States Constitution and federal law.

47.    The Alabama Legislature also failed to reapportion its population according to the 2000 census among its eight State Board of Education districts.  The failure to reapportion its State Board of Education districts violates the voting rights of Plaintiff Montiel and of other Alabama citizens protected by the United States Constitution and federal law.

48.    If new legislative, congressional, and State Board of Education districts are not drawn and implemented promptly by this Court through the exercise of the Court's remedial authority under the United States Constitution and federal laws, the constitutional rights of Plaintiff Gonzalo Fitch Montiel will be irreparably harmed.  Plaintiff Montiel has no adequate remedy at law.

49.    Under Alabama law, a special session of the Legislature may be called at the discretion of the Governor.  Ala. Const. of 1901, art. V, § 122.  Plaintiff Montiel is of information and belief that the Governor has exercised his discretion

to call the Legislature into a special session before its next regular session only for consideration of redistricting involving Alabama Senate and House of Representatives districts.  The Governor apparently has not exercised his discretion to call the Legislature into special session for the consideration of the malapportioned Congressional districts and State Board of Education districts.  The next scheduled regular session of the Alabama Legislature does not begin until January 2002, which will be too late to create constitutionally apportioned districts in time for the 2002 legislative, congressional, and State Board of Education elections.

50.    Prompt action by this Court is necessary to ensure that Alabama's legislative, congressional, and State Board of Education elections, scheduled for primaries in June 2002 and general elections in November 2002, are conducted in a timely manner.  Alabama citizens must be timely informed of the boundaries of the districts in which they reside to provide them with ample opportunity to contemplate their votes and whether to seek office.

51.    The Permanent Legislative Committee on Reapportionment of the Alabama Legislature, which has not met for several months, has failed to create any reapportionment plan for state legislative, congressional, or Board of Education districts for consideration by and input from the public.

52.     Although the Permanent Legislative Committee on Reapportionment of the Alabama Legislature expended time and financial resources on public hearings throughout the state, the hearings were conducted without any proposed plans for reapportionment being available for public comment or input. The failure to provide proposed reapportionment plans for public input and consideration further confuses the citizens of Alabama and supports the Court's exercise of jurisdiction to draw and implement state legislative, congressional, and Board of Education districts pursuant to 2000 census data.

53.     Alabama citizens and candidates for public office are now allowed by Alabama law to begin raising campaign funds for elections in the 2002 election. Ala. Code 17-22A-7 (b). Those who desire to seek office for the state legislature, congress, or Board of Education, however, are left in a quandary as to what will be their district because of the legislature's failure to enact reapportionment legislation pursuant to the 2000 census.

54.     There is justiciable controversy between the parties to this action sufficient to support a federal declaratory judgment action for the relief sought under 28 U.S.C. §§ 2201 et. seq.

VII.     Count One.

55.     The Plaintiff incorporates paragraphs 1 through 54 herein by reference as through fully set out hereinafter.

56.   The failure of the Alabama Legislature to enact and implement a constitutional legislative reapportionment plan for the State of Alabama violates the Plaintiff's constitutional rights under color of state law.

57.   If further legislative elections are held under the current legislative plan, the Plaintiff's right to equal protection under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983 will be violated in that state senators and state representatives will be elected from districts drawn based on 1990 census data.

VIII.   Count Two.

58.   The Plaintiff incorporates paragraphs 1 through 57 herein by reference as through fully set out hereinafter.

59.   The failure of the Alabama Legislature to enact and implement a constitutional congressional reapportionment plan for the State of Alabama violates the Plaintiff's constitutional rights under color of state law.

60.   If further congressional elections are held under the current congressional districting plan, the Plaintiff's right to equal protection under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983 will be violated in that congressmen will be elected from districts drawn based on 1990 census data.

## IX.   Count Three.

61.    The Plaintiff incorporates paragraphs 1 through 60 herein by reference as through fully set out hereinafter.

62.    The failure of the Alabama Legislature to enact and implement a constitutional reapportionment plan for the Alabama State Board of Education violates the Plaintiff's constitutional rights under color of state law.

63.    If further elections are held for members of the State Board of Education under the current districting plan, the Plaintiff's right to equal protection under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983 will be violated in that members of the Board of Education will be elected from districts drawn based on 1990 census data.

## X.   Relief Requested.

WHEREFORE, PREMISES CONSIDERED, the Plaintiff prays that this Court will render judgment against the Defendants and provide the following relief:

A.    Convene a Court of three Judges pursuant to 28 U.S.C. § 2284 with respect to Counts I and II of this Complaint;

B.    Certify a plaintiff class of all citizens of the State of Alabama underrepresented in the Alabama Senate, Alabama House of Representatives, Alabama Congressional districts, and Alabama State

19

Board of Education districts, naming Plaintiff Gonzalo Fitch Montiel as class representative;

C.   Certify a defendant class of all Probate Judges in the State of Alabama naming Defendant Don Davis as class representative;

D.   Enter declaratory relief that this Court has jurisdiction over the reapportionment process in Alabama to issue appropriate orders and grant relief because of the State of Alabama's failure to apportion population pursuant to 2000 census data in violation of the United States Constitution and federal law;

E.   Enter declaratory relief that the present apportionment of the Alabama Senate violates the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983 in that the current districts are not in compliance with the principle of one person, one vote;

F.   Enter declaratory relief that the present apportionment of the Alabama House of Representatives violates the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983 in that the current districts are not in compliance with the principle of one person, one vote;

G.   Enter declaratory relief that the present apportionment of the Alabama congressional districts violates the Fourteenth Amendment to the

United States Constitution and 42 U.S.C. § 1983 in that the current

districts are not in compliance with the principle of one person, one

vote;

H.   Enter declaratory relief that the present apportionment of the Alabama

State Board of Education violates the Fourteenth Amendment to the

United States Constitution and 42 U.S.C. § 1983 in that the current

districts are not in compliance with the principle of one person, one

vote;

I.   Enter declaratory relief that this Court shall exercise continuing

jurisdiction over the reapportionment process in Alabama because of

the important rights at stake and the need for relief for violations of

the United States Constitution that have occurred, are occurring, and

which may occur in the future;

J.   Enter injunctive relief prohibiting Defendants from conducting any

elections pursuant to the current reapportionment plans being used by

the State of Alabama for elections involving the Alabama Senate,

Alabama House of Representatives, the United States House of

Representatives, or the Alabama State Board of Education;

K.   Enter injunctive relief after a hearing on the merits declaring the

boundaries of Alabama Senate districts, Alabama House districts,

Alabama Congressional districts, and Alabama State Board of Education districts under new reapportionment plans based upon 2000 census data for use in the elections to be conducted in 2002;

L.   Advance this matter forward for a hearing on the merits on this Complaint;

M.   Issue an Order awarding to the Plaintiff his court costs, costs of this action, including reasonable attorneys' fees and all expenses pursuant to 42 U.S.C. § 1988;

N.   Grant further and different relief as this Court may deem appropriate.

Respectfully submitted this the 20ᵗʰ day of June 2001.

Mark G. Montiel
Attorney Identification # ASB-9485-T68M
Attorney for the Plaintiff,
    Gonzalo Fitch Montiel

OF COUNSEL:
MARK G. MONTIEL, P.C.
6752 Taylor Circle
Montgomery, AL  36117
(334) 396-3331
(334) 396-4465 Fax